F-2014-312

FILED
IN COURT OF CRIMINAL APPEALS
STATE OF OKLAHOMA

NOV – 4 2014

MICHAEL S. RICHIE
CLERK

IN THE COURT OF CRIMINAL APPEALS
OF THE STATE OF OKLAHOMA
District Court of Oklahoma County Case Number:
CF-2013-2987

---

HARRY GARCIA,

APPELLANT,

-vs-

THE STATE OF OKLAHOMA,

APPELLEE.

USDC – WDSK
§ 2254 –Petitioner
Exhibit A.

---

BRIEF FOR AND ON BEHALF

OF

HARRY GARCIA,

APPELLANT.

---

ANDREA DIGILIO MILLER
OBA No. 17019
Assistant Public Defender
Oklahoma County Public Defender's Office
611 County Office Building
320 Robert S. Kerr Avenue
Oklahoma City, Oklahoma 73102
(405) 713-1550

ATTORNEY FOR APPELLANT

November 4, 2014

## TABLE OF CONTENTS

Page

BRIEF OF APPELLANT

STATEMENT OF FACTS..................................................................................... 2

ARGUMENT AND AUTHORITY

PROPOSITION I

THE TRIAL COURT ERRED IN REFUSING TO INSTRUCT THE
JURY ON THE DEFENSE OF PERSON IN VIOLATION OF MR.
GARCIA'S FUNDAMENTAL RIGHT TO PRESENT A DEFENSE
AND DUE PROCESS OF LAW UNDER THE FEDERAL AND
STATE CONSTITUTIONS. ...................................................................... 5

PROPOSITION II

BECAUSE THE EVIDENCE WAS INSUFFICIENT TO SUPPORT
MR. GARCIA'S CONVICTION, DUE PROCESS REQUIRES HIS
CASE TO BE REVERSED AND REMANDED WITH
INSTRUCTIONS TO DISMISS. ............................................................... 9

PROPOSITION III

THE TRIAL COURT'S REFUSAL TO INSTRUCT THE JURY ON
THE LESSER RELATED OFFENSE OF SECOND DEGREE
MURDER UPON THE REQUEST OF BOTH PARTIES VIOLATES
DUE PROCESS AND CONSTITUTES REVERSIBLE ERROR. .............. 12

PROPOSITION IV

TRIAL ERRORS, WHEN CONSIDERED IN A CUMULATIVE
FASHION, WARRANT A NEW TRIAL OR A SENTENCE
MODIFICATION. ..................................................................................... 17

CONCLUSION ..................................................................................................... 19

CERTIFICATE OF SERVICE........................................................................... 19

i

## TABLE OF AUTHORITIES

### CASES

*Ball v. State,*
  2007 OK CR 42, 173 P.3d 81 ........................................................... 5, 13

*Bechtel v. State,*
  1987 OK CR 126, 738 P.2d 559 ........................................................... 17

*Beck v. Alabama,*
  447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980) .......................... 12

*Bland v. State,*
  2000 OK CR 11, 4 P.3d 702 ................................................................. 12

*Chandler v. State,*
  1977 OK CR 324, 572 P.2d 285 ........................................................... 17

*Chapman v. California,*
  386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) ................................ 18

*Cuesta-Rodriguez v. State,*
  2010 OK CR 23, 241 P.3d 214 .............................................................. 6

*Davis v. State,*
  2011 OK CR 29, 268 P.3d 86 ................................................................. 5

*Dennis v. State,*
  1976 OK CR 266, 556 P.2d 617 ............................................................. 5

*Donnelly v. DeChristoforo,*
  416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974) ............................ 17

*Dorsey v. State,*
  1987 OK CR 133, 739 P.2d 528 ...................................................... 15, 16

*Faubion v. State,*
  1977 OK CR 302, 569 P.2d 1022 .......................................................... 18

*Foster v. State,*
  1957 OK CR 23, 308 P.2d 661 .............................................................. 10

*Frazier v. State,*
  1981 OK CR 13, 624 P.2d 84 ................................................................ 10

*Freeman v. State,*
  1984 OK CR 60, 681 P.2d 84 ............................................................... 18

*Jackson v. Virginia,*
  443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ........................ 9, 10

*Johnson v. State,*
  1977 OK CR 188, 564 P.2d 664 ........................................................... 10

*Keeble v. United States,*
  162 U.S. 313, 16 S.Ct. 839, 40 L.Ed. 980 (1896) .................................. 12

*Kinsey v. State,*
  1990 OK CR 64, 798 P.2d 630 ............................................................... 5

*Kogan v. People,*
  756 P.2d 945 (Colo.1988) ..................................................................... 11

*Malone v. State,*
  2007 OK CR 34, 168 P.2d 185 ............................................................... 6

*McCarty v. State,*
  1988 OK CR 271, 765 P.2d 1215 ......................................................... 17

*McHam v. State,*
  2005 OK CR 28, 126 P.3d 662 ............................................................. 12

*Mitchell v. State,*
  2005 OK CR 15, 120 P.3d 1196 ........................................................... 11

*Owens v. State,*
  1985 OK CR 114, 706 P.2d 912 ........................................................... 18

*Palmer v. State,*
  1970 OK CR 49, 468 P.2d 799 ............................................................. 10

*Parker v. State,*
  1996 OK CR 19, 917 P.2d 980 ............................................................. 12

*Penninger v. State,*
  1991 OK CR 60, 811 P.2d 609 ............................................................. 17

*Phillips v. Workman,*
  604 F.3d 1202 (10th Cir. 2010) ................................................. 13, 15, 16

iii

*Pickens v. State,*
    1994 OK CR 74, 885 P.2d 678 ........................................................... 12

*Shrum v. State,*
    1999 OK CR 41, 991 P.2d 1032 ......................................................... 12

*Skelly v. State,*
    1994 OK CR 55, 880 P.2d 401 ........................................................... 17

*State v. Sundberg,*
    611 P.2d 44 (Alaska 1980) ...................................................................8

*Stevens v. State,*
    1951 OK CR 86, 232 P.2d 949 ........................................................... 17

*United States v. Rivera,*
    900 F.2d 1462 (10th Cir.1990)...................................................... 17, 18

*United States v. Taylor,*
    113 F.3d 1136 (10th Cir. 1997)........................................................... 10

*Washington v. State,*
    1986 OK CR 176, 729 P.2d 509 ......................................................... 10

*Whitechurch v. State,*
    1983 OK CR 9, 657 P.2d 654 ....................................................... 6, 7, 8

*Williams v. State,*
    1996 OK CR 16, 915 P.2d 371 ..............................................................6

*In re Winship,*
    397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)....................... 9, 10

## CONSTITUTIONS

U.S. Const. Amend. V................................................................................ 5, 9

U.S. Const. Amend. VI..................................................................................5

U.S. Const. Amend. XIV .................................................................... 5, 9, 17

Okla. Const. art. 2, § 7 ...................................................................... 5, 9, 17

Okla. Const. art. 2, § 20 ..............................................................................5

## STATUTES

Okla. Stat. tit. 21, § 701.7 ......................................................................... 1

Okla. Stat. tit. 21, § 701.8 ......................................................................... 13

Okla. Stat. tit. 21, § 733 ............................................................................. 7

Okla. Stat. tit. 22, §§ 31-33 ........................................................................ 6

Okla. Stat. tit. 22, § 33 ............................................................................... 7

Okla. Stat. tit. 22, § 916 ............................................................................ 12

## MISCELLANEOUS

*Oklahoma Uniform Jury Instructions – Criminal 2d*

    OUJI-CR (2d) 4-91 ................................................................. 13
    OUJI-CR (2d) 8-3 ................................................................... 6

**IN THE COURT OF CRIMINAL APPEALS OF THE STATE OF OKLAHOMA**

HARRY GARCIA, )
)
              Appellant, )    APPELLATE CASE
)    NO. F-2014-312
vs. )
)
THE STATE OF OKLAHOMA, )    District Court Case No.
)    CF-13-2987
              Appellee. )

## BRIEF OF APPELLANT

Appellant, Harry Garcia, was charged by Information in Oklahoma County District Court Case No. CF-13-2987 with Count 1 murder in the first degree (malice aforethought) in violation of Okla. Stat. tit. 21, § 701.7. (O.R. 1) The State filed a "Page 2" alleging Mr. Garcia had two prior felony convictions. (O.R. 4)

Assistant Oklahoma County Public Defenders Brian Young and Rebecca Large represented Appellant throughout the proceedings. Assistant Oklahoma County District Attorneys Dan Gridley and William Pierce represented the State of Oklahoma at trial.

At a jury trial held on February 10-13, 2014 before the Honorable Ray C. Elliott, the jury found Mr. Garcia guilty of first degree murder. After the sentencing stage of trial the jury assessed punishment at life in prison. At formal sentencing held on April 3, 2014 the trial court sentenced the defendant in accordance with the jury's verdict and ran the sentence concurrently to Mr. Garcia's cases in CF-05-3325 and CF-05-5407. (O.R. 179)(S.Tr. 7)

Mr. Garcia now appeals this conviction.

## STATEMENT OF FACTS

Most of the facts related to the stabbing death of Casey Wright are undisputed[1]. In April 2013 Harry Garcia was living in apartment 209 at the Country Club Apartments in Oklahoma City with his mother, sister Bianca, niece Shania, teenage nephew Isbel and some younger nieces and nephews. (Tr.III 138) In the late afternoon of April 20, 2013 a fight had taken place between Mr. Garcia's niece Shania and another girl who lived in the complex. (Tr.III 138) Mr. Garcia was not present when that occurred but had become aware of it when members of his family told him about it. (Tr.III 138)

Following the argument between Shania and Rosalinda Turner, Miss Turner's parents went to Mr. Garcia's apartment and asked to talk to Shania's parents. (Tr.III 140) Mr. Garcia was lying down after returning home from work when they arrived at the apartment and went to the door to see what was going on. (Tr.III 140) Miss Turner's family had called the police who responded around 5:30 or 6:00 p.m. (Tr.III 141) Ultimately the situation was resolved and everyone left apartment 209 and Mr. Garcia returned to the bedroom. (Tr.III 141) Mr. Garcia asked is nieces and nephews to stay in the apartment so they wouldn't have any more trouble. (Tr.III 142)

---

[1] State's witnesses Roalinda Turner (Tr.II 27-63), Shawna Taylor (Tr.II 63-88), Ashley Taylor (Tr.II 89-123), Haley Taylor (Tr.II 124-149), Aldolfo Colchodo (Tr.II 149-178), Shania Ledezma (Tr.II 179-205), Armondo Hernandez (Tr.II 205-243), Isbel Ledzma (Tr.III 25-65) and defense witness Rosa Chavez (Tr.III 105-134) all testified to the circumstance surrounding the parts of the fight that they saw. For the most part the rendition of events is consistent. Therefore, the statement of facts will not recount each witness' testimony except where it relates to the issues raised herein.

2

Later that evening Mr. Garcia's nephew came into his room to ask for a cigarette. (Tr.III 142) He told his nephew to stay by the door because they didn't need any trouble. (Tr.III 143) He told his nephew he would be outside in a minute for a cigarette. (Tr.III 143) He got dressed and went outside to retrieve a cigarette from his nephew who was standing just outside the door as he had been told. (Tr.III 143) Mr. Garcia got his cigarette and walked to the parking lot to the south of the building.

When he returned from the parking lot he observed his nephews Isbel and Armondo walking towards the tires in the common area of the apartment complex and towards Casey Wright and Clifton Holder[2]. (Tr.III 144) He asked what was going on and one of his younger nephews told him <u>Isbel and Ardmondo were fighting with Wright and Holder</u>. (Tr.III 144) During this time the four involved in the confrontation were moving closer to each other.

Mr. Garcia testified that he tried to tell his nephews to "chill out" and that they don't need any problems. (Tr.III 145) He tried to get them to go back into the apartment but was unsuccessful. <u>His nephew had to push Mr. Garcia out of the way before the first punch was thrown</u>. (Tr.III 145-146) It was his nephew Isbel who pushed him out of the way before Isbel began fighting with Casey Wright. After he watched his nephew Isbel start fighting with Mr.

---

[2] Ashley Turner, whose parents and siblings lived in apartment 211 testified that Casey Wright was her best friend and former school mate. (Tr.II 90-91) She had picked up Wright and Holder and went to the apartment complex on the evening of April 20th to wait to get an address of a party that evening. (Tr.II 95) They left their car so Holder could say hello to Miss Turner's parents and then sat on the tires in the common area while they waited for the text about the address. (Tr.II 94-97)(State's exhibit 6) The altercation between the men began while she was in the parking lot helping Shawna Taylor move her car. (Tr.II 95-96)

Wright, he saw his other nephew, Armondo, start fighting with Mr. Holder. (Tr.III 146)

After observing Isbel getting "handled up" by Mr. Wright, meaning that he was losing the fight[3], Mr. Garcia went to his apartment and grabbed a knife that was kept over the door along with a bundle of sage placed there by his mother. (Tr.III 147, 153)(Tr.III 49-50)  His uncontradicted testimony was that he grabbed the knife hoping it would put some fear in them to make them leave his family alone.  (Tr.III 147)  Mr. Garcia further testified it was a combination of seeing his nephew getting beaten and the crowd that was standing around the fight that made him get the knife.  He was familiar with fights that occurred in that area that he described for the jury as "a very violent area." (Tr.III 148) After he retrieved the knife he went back out and observed the fight still going on.

Suddenly the fight between Isbel and Mr. Wright stopped and Wright began walking towards Mr. Garcia.  Mr. Garcia told him he didn't want to "step over to me" and was showing the knife.  Instead of scaring Mr. Wright with the knife Mr. Wright kept walking towards Mr. Garcia.  (Tr.III 149-150) Mr. Garcia, believing he was about to be hit, made a sudden jabbing motion with this arm. (Tr.III 150) Mr. Garcia knew he had stabbed Mr. Wright but testified he had no intention of using the knife for anything but to scare Wright and Holder away. (Tr.III 151) Realizing what had happened Mr. Garcia told his nephews "lets go" and ran away from the scene.  (Tr.III 151)

---

[3] Isbel Ledezma himself testified that Mr. Wright was beating him in the fight.  (Tr.III 36)  Shawna Taylor testified that Mr. Wright slammed Isbel's head into a window sill.  (Tr.II 85)

According to Dr. Inas Yacoub Mr. Wright died of a single 1.7 centimeter stab wound to the chest.  (Tr.III 18, 22)(State's exhibit 16) At the time of his death Mr. Wright was 5'7" tall and weighed 215 pounds.  Mr. Garcia's book-in sheet indicates he is 5'11 and 155 pounds.

All other necessary facts will be contained in the relevant propositions of error below.

## ARGUMENT AND AUTHORITY

### PROPOSITION I

**THE TRIAL COURT ERRED IN REFUSING TO INSTRUCT THE JURY ON THE DEFENSE OF PERSON IN VIOLATION OF MR. GARCIA'S FUNDAMENTAL RIGHT TO PRESENT A DEFENSE AND DUE PROCESS OF LAW UNDER THE FEDERAL AND STATE CONSTITUTIONS.**

Due process of law requires that the jury be instructed on all matters of law necessary to determine material issues raised by the evidence including instructions on those issues of law bearing on the defendant's defense. U.S. Const. Amends. V, VI, XIV; Okla. Const. art. 2, §§ 7, 20; *Dennis v. State*, 1976 OK CR 266, ¶ 18, 556 P.2d 617, 621.   This Court recognizes the principle that the law protects a defendant's right to a jury instruction on his theory of defense where there is evidence to support it, even if the evidence is discredited.  *Ball v. State*, 2007 OK CR 42, ¶ 29, 173 P.3d 81, 89; *Kinsey v. State*, 1990 OK CR 64, ¶ 8, 798 P.2d 630, 632. *cf. Davis v. State*, 2011 OK CR 29, ¶ 94, 268 P.3d 86, 115 (Self-defense instruction unnecessary where other evidence in case contradicted defendant's version of events.) The evidence may come from any source and it should not be weighed by the trial court in determining whether to give a defense

instruction. *Id. See also Malone v. State*, 2007 OK CR 34, ¶ 22, 168 P.2d 185, 197. The fact that the record may contain evidence adequate to cause a jury's rejection of the defendant's theory of defense is **wholly irrelevant** to the question of whether Mr. Garcia was entitled to have the issue submitted via an instruction about the defense theory. *Williams v. State*, 1996 OK CR 16, ¶ 13, 915 P.2d 371, 379 (The jury not the State or the Court decides which evidence is believable).

Defense counsel proposed, in writing, instructions on the statutory defense of resistance by another person as provided by in Okla. Stat. tit. 22, §§ 31-33. (O.R. 147-148) The trial court denied the requested theory of defense instruction based on the fact that it was not a uniform instruction, while acknowledging the statutory reference. (Tr. IV 13) The trial court did not inquire as to whether there was a corresponding uniform instruction. OUJI-CR (2d) 8-3 covers the defense codified in section 33. As such, denying the theory of defense instruction because the request was supported by a statutory reference instead of a uniform instruction constitutes an abuse of discretion. The trial court has an absolute obligation to instruct on all salient features of the law, including theory of defense instructions. Because the trial court's rejection of an applicable theory of defense instruction was arbitrary it constitutes an abuse of discretion. An abuse of discretion is any "unreasonable, unconscionable and arbitrary action taken without proper consideration of the facts and law pertaining to the matter submitted." *Cuesta-Rodriguez v. State*, 2010 OK CR 23, 241 P.3d 214, 225.

*Whitechurch v. State*, 1983 OK CR 9, 657 P.2d 654, commands that instructions on the defense of resistance by another were appropriate in this

6

case.  In *Whitechurch*, the defendant was charged with first degree manslaughter after kicking the decedent to the ground during an altercation between the decedent and defendant's sister over a traffic incident.  *Id.* at ¶¶ 3, 9.  Both parties drove away from the scene but several days later the decedent expired from "complications of blunt trauma to the head."  *Id.* at ¶ 4.  This case is factually similar to *Whitechurch* in an important respect:  <u>The defendant in</u> <u>*Whitechurch* was not initially a part of the altercation that resulted in the</u> <u>decedent's death</u>.  <u>Instead</u>, <u>the decedent</u>, who appeared intoxicated, <u>had</u> <u>confronted the defendant's sister</u> and <u>Whitechurch intervened</u>.

The *Whitechurch* Court rejected an argument that the trial court should have instructed on defense of others as provided for in Okla. Stat. tit. 21, § 733. The Court's rejection of the section 733 defense was based on the absence of siblings within the class of persons in defense of whom life may be taken.  *Id.* at ¶11.  However, <u>the Court considered *sua sponte* whether instructions on the</u> <u>section 33 defense should have been given</u>.  *Id.* at ¶ 12.  <u>The Court held that</u> <u>such an instruction was appropriate</u>.  *Id.* at ¶ 15.

In so holding the *Whitechurch* Court described the defense in <u>Okla. Stat.</u> <u>tit. 22, § 33</u> as:

> <u>an expansive rule justifying reasonable force by any person in aid or</u> <u>defense of a person about to be injured during the commission of an</u> <u>offense</u>.  <u>Section 33 justifying reasonable force to prevent a public</u> <u>offense in which personal injury is imminent</u>, compliments, and to a certain extent, <u>overlaps the principles of self-defense</u> <u>and defense of</u> <u>others</u>.

*Id.* at ¶ 14. Citing *State v. Sundberg*, 611 P.2d 44, 47 (Alaska 1980) the Court recognized that the defense of lawful resistance generally applies to any situation in which a person seeks to prevent or terminate either misdemeanor or felony amounting to a breach of the peace. *Whitechurch* at ¶ 13.

In addition to Mr. Garcia's testimony explaining why he got the knife and lack of intention to use the knife for any purpose other than to scare Mr. Wright away, other witness testimony supports the giving of the requested defense instructions. Shawna Taylor[4] testified that after Mr. Garcia retrieved the knife he warned Mr. Wright that he had a knife or a "shank" and she heard Mr. Wright respond by saying he didn't care. (Tr.II 78, 84) Ashley Turner heard someone say that he was going to shoot someone but testified she could have misunderstood and said shank someone. (Tr.II 104) That is somewhat consistent with Armando Hernandez's testimony that Casey said something about going to get guns prior to Mr. Garcia getting the knife. (Tr.II 218) No one at the scene had a gun. Hayley Taylor testified Mr. Garcia warned Mr. Wright that he was going to shank him before he retrieved the knife which is consistent with Mr. Garcia's testimony that he only intended to use the knife to scare Mr. Wright away. (Tr.II 138) Shania Ledezma testified that she observed Mr. Wright and Mr. Garcia approach each other before the stabbing but did not hear them say anything. (Tr.II 198, 203)

Given the fact that section 33 is an "expansive rule" justifying the use of reasonable force, the court in this case should have instructed the jury on this defense. The jury, who is the ultimate finder of fact, may or may not have agreed

[4] Miss Taylor had her back to Mr. Garcia and Mr. Wright when the stabbing occurred and could not see what happened immediately preceding the stabbing. (Tr.II 85)

that it was a reasonable use of force under these circumstances. The jury, not the trial court, should have made that decision. Mr. Garcia was observing both of his nephews in a fight with Casey Wright and Corey Holder. By all accounts Mr. Wright was getting the better of Mr. Ledezma and Mr. Garcia got the knife, not to use, but to attempt to scare away Mr. Wright when Mr. Wright decided to confront Mr. Garcia. By not instructing the jury on the defense of resistance by another person Mr. Garcia could not argue any aspect of self-defense to the jury while the prosecution was allowed to argue the issue had been foreclosed. (Tr.IV 28) Moreover, the court gave no instructions that would have allowed the jury to consider anything but conviction as charged or acquittal. Given Mr. Garcia's testimony it is unlikely a jury not given any other options would chose to acquit.

Under these circumstances, the lack of defense instructions violated Mr. Garcia's fundamental right to a fair trial. U.S. Const. amends. V, XIV; Okla. Const. art. 2, § 7.

<div align="center">PROPOSITION II</div>

**BECAUSE THE EVIDENCE WAS INSUFFICIENT TO SUPPORT MR. GARCIA'S CONVICTION, DUE PROCESS REQUIRES HIS CASE TO BE REVERSED AND REMANDED WITH INSTRUCTIONS TO DISMISS.**

The Due Process Clause of the Fourteenth Amendment and the corresponding provisions of the Oklahoma Constitution require that a criminal defendant only be convicted "upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S.Ct. 2781, 2787, 61 L.Ed.2d 560 (1979), citing *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

On appeal, the reviewing court must accept all reasonable inferences and credibility choices that tend to support the trier of fact's verdict. *See Washington v. State*, 1986 OK CR 176, ¶ 8, 729 P.2d 509, 510.  However, it is incumbent upon the reviewing court to independently review the record under *Jackson*:

> ...Winship...requires more than...a trial ritual.  A doctrine establishing so fundamental a substantive constitutional standard must also require that the factfinder will rationally apply that standard to the facts in evidence...Yet a properly instructed jury may occasionally convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt...Under Winship, which established proof beyond a reasonable doubt as an essential of Fourteenth Amendment due process, it follows that when such a conviction occurs in a state trial, it cannot...stand.

*Jackson*, 443 U.S. at 317-318, 99 S.Ct. at 2788, 61 L.Ed.2d at 572-573 (footnote omitted).  Hence, as a matter of federal constitutional law, it is erroneous for a state reviewing court to simply defer to the trier of fact's verdict.

This Court has overturned a jury's verdict even when there was circumstantial evidence from which the guilt of an accused "might be inferred," where the record evidence raised no more than a suspicion of guilt.  *Palmer v. State*, 1970 OK CR 49, ¶ 4, 468 P.2d 799, 800.  *See also United States v. Taylor*, 113 F.3d 1136, 1144 (10th Cir. 1997)(circumstantial evidence must be substantial and do more than raise a suspicion of guilt);  *Johnson v. State*, 1977 OK CR 188, ¶ 11, 564 P.2d 664, 666 (evidence raising only a suspicion is insufficient).  "[P]roof amounting only to a strong suspicion or mere probability is insufficient."  *Frazier v. State*, 1981 OK CR 13, ¶ 8, 624 P.2d 84, 86.  *Accord Foster v. State*, 1957 OK CR 23, ¶ 15, 308 P.2d 661, 665.  "[V]erdicts in criminal cases may not be based on guessing, speculation, or conjecture."

*Kogan v. People*, 756 P.2d 945, 950 (Colo.1988) (citation omitted). *See also Mitchell v. State*, 2005 OK CR 15, ¶ 63, 120 P.3d 1196, 1211.

The only issue in this case was whether Mr. Garcia intended to kill Mr. Wright. The evidence in this case is insufficient to prove the element of malice aforethought beyond a reasonable doubt. Mr. Garcia testified his intention in retrieving the knife used in the homicide was to scare Mr. Wright away and leave his nephew alone. Nothing in the evidence contradicts that testimony beyond a reasonable doubt. Almost all the witnesses testified that Mr. Garcia gave Mr. Wright some type of warning that he was getting a weapon and he acted consistently with his explanation about why he retrieved the weapon. After stabbing Mr. Wright one time he and his nephews left the scene and he did not know that Mr. Wright died until later. The entire episode was chaotic with many people whom Mr. Garcia did not know standing around the courtyard watching the fight and yelling things. Some evidence was offered by the State's witnesses that Mr. Wright mentioned getting a gun or shooting someone.

Under all these facts and circumstances the State's evidence simply does not support a conclusion that Mr. Garcia formed the requisite intent to kill when he stabbed Mr. Wright one time then fled. As such, Mr. Garcia respectfully asks the Court to reverse and remand his conviction with instructions to dismiss.

## PROPOSITION III

**THE TRIAL COURT'S REFUSAL TO INSTRUCT THE JURY ON THE LESSER RELATED OFFENSE OF SECOND DEGREE MURDER UPON THE REQUEST OF BOTH PARTIES VIOLATES DUE PROCESS AND CONSTITUTES REVERSIBLE ERROR.**

The trial court's failure to instruct the jury on the lesser offenses of second degree murder and second degree manslaughter, as alternatives to first degree murder, deprived Mr. Garcia of due process, a fair trial, and a reliable sentencing determination, thus violating the United States and Oklahoma constitutions. Okla.Stat. tit. 22, § 916 allows the jury to consider any lesser related offenses. The jury's ability to consider lesser offenses in a remnant of the common law as an aid to the prosecution but can also be beneficial to the defendant. *Beck v. Alabama,* 447 U.S. 625, 633, 100 S.Ct. 2382, 2387-2388, 65 L.Ed.2d 392 (1980). The right of the defendant to have the jury consider lesser related offenses has been recognized by the United States Supreme Court for well over a century. *Keeble v. United States*, 162 U.S. 313, 314-315, 16 S.Ct. 839, 839, 40 L.Ed. 980 (1896).

Oklahoma recognizes that the court is obligated to instruct on any lesser-included offenses finding support in the evidence. *Bland v. State,* 2000 OK CR 11, ¶ 54, 4 P.3d 702, 719; *Shrum v. State*, 1999 OK CR 41, ¶ 6, 991 P.2d 1032, 1034; *Pickens v. State*, 1994 OK CR 74, ¶ 8, 885 P.2d 678, 682-83, *overruled on other grounds by Parker v. State*, 1996 OK CR 19, 917 P.2d 980, 986. This requirement exists even if the defendant has not asked for the instruction. *See McHam v. State,* 2005 OK CR 28, ¶ 20, 126 P.3d 662, 669-

670. The proper test to determine whether a lesser-related offense instruction should be given is whether *prima facie* evidence of the offense has been admitted. *Ball v. State*, 2007 OK CR 42 at ¶ 29, 173 P.3d at 90. On appeal the question is not whether there is sufficient evidence to support a conviction of the greater offense but whether a rational jury could have found Appellant guilty of the lesser offense. *Phillips v. Workman*, 604 F.3d 1202, 1213 (10th Cir. 2010).

Okla. Stat. tit. 21, § 701.8 explains "Homicide is murder in the second degree in the following cases: When perpetrated by an act imminently dangerous to another person and evincing a depraved mind, regardless of human life, although without any premeditated design to effect the death of any particular individual" The language of § 701.8 (1) is broad enough to encompass conduct committed with the intent to injure greatly a specific person but not kill him. *See* OUJI-CR 2d. 4-91 Committee Comments. OUJI-CR 2d. 4-91 sets forth the following elements for second degree murder applicable in this case:

First, the death of a human;

Second, caused by conduct which was imminently dangerous to another;

Third, the conduct was that of the defendant;

Fourth, the conduct evinced a depraved mind in extreme disregard of human life;

Fifth, the conduct is not done with the intention of taking the life of any particular individual.

The instruction further explains:

> You are further instructed that a person evinces a "depraved mind"
> when he engages in imminently dangerous conduct with
> contemptuous and reckless disregard of, and in total indifference
> to, the life and safety of another.

> You are further instructed that "imminently dangerous conduct"
> means conduct that creates what a reasonable person would
> realize as an immediate and extremely high degree of risk of death
> to another person.

The State initially requested the second degree murder instructions. (Tr.IV 5)

Defense counsel agreed with that request.  (Tr.IV 7) Both the prosecutor and

defense counsel addressed the evidence supporting giving the lesser offense

instruction.  The prosecutor, Mr. Gridley, stated:

> Evidence that the victim stabbed the victim in a, I guess I would
> say a chaotic situation, that it was only one stab and not multiple
> stabs, which would lean more towards an intent to kill...

> The fact that proof of malice aforethought is always going to come
> barring some highly unusual circumstances from surrounding
> circumstances, and it is something that is open to various
> interpretations based on the evidence.

> And although we believe that the evidence is certainly there
> that—and is strong that a jury can look at this and see, you know,
> you stabbed someone right there in the chest in the heart, that
> that's clear intent to kill.

> Although, looking at the facts and circumstances of the case,
> it can be interpreted differently by different people, and it is
> possible that a jury could see this and think, you know, he
> intended to stab him and injure him but not necessarily to form
> that intent to kill.

(Tr. IV 6-7) Defense counsel agreed with the request stating:

> We agree with the State's request for a murder in the second
> degree. Mr. Garcia took the stand and testified and provided
> evidence that he did not have any intention to kill the decedent

14

when he struck him with a knife, that his intention was to protect
himself, but not—there's no intention to cause death.

(Tr.IV 7-8) When asked by the trial court what evidence supported the lesser

offense counsel explained:

> Specifically I asked Mr. Garcia when he was on the stand if
> he intended to kill Casey Wright when he approached him, and he
> said, no, he did not.

> There was a single stab wound when Mr. Garcia left the
> scene of where this took place. Mr. Wright was still up and moving
> about.

> When someone had asked Mr. Wright, I believe it was Aldofo
> Colchodo was the name of the witness, Judge. When he asked Mr.
> Wright, he said I think he had been stabbed.   Mr. Wright
> responded to him, no, I'm fine.   It's nothing.   While he later died
> from that, that was at the hospital some time later and nothing, at
> least arguable, that the jury could take from Mr. Garcia's
> testimony is that he left after inflicting a single stab wound.  As far
> as he could tell that person was alive when he left.   He did not
> continue with any attempts to kill him.

(Tr.IV 8-9)  The trial court rejected the request by both sides for a second

degree murder instruction finding that this isn't a case where the defendant

was just swinging a knife and someone was struck but instead there was an

intended target. (Tr.IV 18-19)

In *Phillips* the Tenth Circuit considered whether an Oklahoma defendant

convicted of first degree murder for killing the decedent with a single stab

wound to the chest could support a conviction for second degree depraved

mind murder.   The Court, looking at the circumstances surrounding the

incident including the defendant's history of mental illness and his probable

intoxication, found that a rational jury could have found him guilty of second

degree murder.  Likewise, in *Dorsey v. State*, 1987 OK CR 133, ¶¶ 5-6, 739

P.2d 528, 529, this Court found that a second degree murder conviction was supported by the evidence where the defendant purposefully armed himself with a knife, started a fight with the victim, and intentionally stabbed him. The decedent *Dorsey* was the only intended victim after having an affair with the Appellant's wife. *Id.*

In a stabbing case there is no legal requirement that the person stabbed was an unintended victim or that the stabbing occurred as a result of the defendant acting recklessly with a knife resulting in a fatality. Rather, the act of stabbing itself, as in *Dorsey* and *Phillips* is sufficient to support a conviction for depraved mind murder even where the defendant's actions are directed towards a specific person. Here, Mr. Garcia was in a chaotic situation watching his nephews engage in a fight where he perceived one nephew as getting beaten and being in danger. He retrieved a weapon that was in close proximity and explained his intent was to use the knife to scare Mr. Wright. The act of stabbing Mr. Wright one time in the chest could have been construed by a rational jury as fulfilling the elements of second degree murder. The jury should have been the factfinder to decide what degree of homicide occurred in this case, not the trial court.

Because the trial court committed reversible error in refusing to instruct the jury on second degree murder, Mr. Garcia asks the Court to grant him a new trial before a properly instructed jury.

## PROPOSITION IV

**TRIAL ERRORS, WHEN CONSIDERED IN A CUMULATIVE FASHION, WARRANT A NEW TRIAL OR A SENTENCE MODIFICATION.**

An accused is entitled to a fair and impartial trial. *Stevens v. State*, 1951 OK CR 86, 232 P.2d 949, 958. When a review of the entire trial record reveals numerous irregularities that tend to prejudice the rights of the accused, and where a cumulation of said irregularities deny the accused a fair trial or sentence, the case will be reversed for a new trial or the sentences modified, even though one of the errors standing alone would not justify reversal. *Skelly v. State*, 1994 OK CR 55, ¶ 32, 880 P.2d 401, 407; *Penninger v. State*, 1991 OK CR 60, ¶ 23, 811 P.2d 609, 613; *Bechtel v. State*, 1987 OK CR 126, ¶ 12, 738 P.2d 559, 561; *Chandler v. State*, 1977 OK CR 324, ¶ 13, 572 P.2d 285, 290. *See also* U.S. Const. amend. XIV; *Donnelly v. DeChristoforo*, 416 U.S. 637, 648-649, 94 S.Ct. 1868, 1874, 40 L.Ed.2d 431, 440 (1974)(Douglas, J., Dissenting); *United States v. Rivera*, 900 F.2d 1462, 1469-1470 (10thCir.1990); Okla. Const. art. 2, § 7; *McCarty v. State*, 1988 OK CR 271, ¶ 17, 765 P.2d 1215, 1221-1222.

A cumulative error analysis aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless. *Rivera*, 900 F.2d at 1470. Unless an aggregate harmlessness determination can be made,

collective error will mandate reversal. *Id.* If any of the errors being combined are constitutional in nature, the State must prove beyond a reasonable doubt that such errors could not have contributed to the verdicts rendered. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 710 (1967); *Rivera*, 900 F.2d at 1470 n.6.

Considerations of cumulative error override the absence of defense objections or invited error. *Faubion v. State*, 1977 OK CR 302, ¶ 8, 569 P.2d 1022, 1024. In determining whether a sentence is excessive, this Court considers the entire record, including improper matter received without objection, and where justice requires, the sentence will be modified. *Freeman v. State*, 1984 OK CR 60, ¶ 8, 681 P.2d 84, 86. *See also Owens v. State*, 1985 OK CR 114, ¶ 5, 706 P.2d 912, 913. Mr. Garcia asks the Court to not only analyze the trial errors raised herein individually, but also collectively, to determine their cumulative effect on his conviction and sentence.

In light of the evidence produced at trial and the absence of evidence that Mr. Garcia intended to kill Casey Wright, Mr. Garcia asks the Court to modify his conviction and sentence or grant any other relief the Court deems necessary under the facts and law raised herein.

## CONCLUSION

Based on the above and foregoing arguments and authorities, Appellant respectfully asks this Court to reverse and remand his convictions for a new trial, modify his sentence, or grant any and all other relief the Court deems necessary to meet the ends of justice.

Respectfully submitted,

ROBERT A. RAVITZ
Oklahoma County Public Defender

BY: _____

**ANDREA DIGILIO MILLER** (OBA # 17019)
Assistant Public Defender
611 County Office Building
320 Robert S. Kerr
Oklahoma City, Oklahoma  73102
(405) 713-1550

ATTORNEY FOR APPELLANT

## CERTIFICATE OF SERVICE

This is to certify that on the date of filing of this instrument, a true and correct copy of the same was delivered to the Clerk of the Court of Criminal Appeals with instructions to deliver said copy to the Office of the Attorney General of the State of Oklahoma.

_____
**ANDREA DIGILIO MILLER**